UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD A. CARLSON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:06-CV-253 RM |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant ) | |

## OPINION AND ORDER

Richard A. Carlson seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court affirms the Commissioner's decision.

### BACKGROUND

Mr. Carlson suffered an accidental gunshot wound to the right occipital area of the head in the late 1970's. Metal fragments remain in the area to this day. The medical evidence showed that Mr. Carlson was first diagnosed with torticollis in 1992, a condition that might be attributable to his head injury.[1] Mr. Carlson

---

[1] Torticollis is a muscle spasm in the neck that produces a contraction of several muscles pulling the head to one side in an unnatural position, causing pain and stiffness in the neck. The American Medical Association Complete Medical Encyclopedia 1224-1225(2003).

testified that he began experiencing migraine headaches at about the same time. When asked how often they occurred, he said the headaches initially happened once a month, increased to twice a month at some unidentified point before 1999, occurred four times a month after that, and could sometimes last for up to six hours.

Mr. Carlson also suffered an injury to his right knee in the '70s. He had what appeared to be ACL reconstruction in 1977, two subsequent knee arthroscopies (reportedly in 1987 and 1992), and a total knee replacement in December 2004.

In his application for disability insurance benefits, Mr. Carlson alleged an onset of disability as of December 31, 1989 due to torticollis/dystonia, cerebral atrophy, headaches, and the right knee impairment. His application was denied initially, on reconsideration, and after an administrative hearing at which he was represented by counsel.

At the hearing, the administrative law judge heard testimony from Mr. Carlson, his wife, and vocational expert Leonard Fisher, Ph.D. Applying the standard five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ found that Mr. Carlson hadn't engaged in substantial gainful activity since December 1989 (his alleged onset date); that his right knee impairment, migraine headaches, and disorders of the back were severe but didn't meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4; and that he had a residual functional capacity before March 31, 1994 (the date he was last insured

for benefits) for light work.[2] Relying on the vocational expert's testimony, the ALJ concluded at step four that Mr. Carlson still could perform his past relevant work as a sales clerk and so wasn't disabled within the meaning of the Act and wasn't entitled to benefits. When the Appeals Council denied Mr. Carlson's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Fast v. Barnhart, 397 F.468, 470 (7th Cir. 2005). This appeal followed.

Mr. Carlson challenges the ALJ's assessment of his residual functional capacity and ability to perform past work, contending that it isn't supported by substantial evidence or adequate reasoning, and that the ALJ breached his duty to develop a full and fair record.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. 42 U.S.C. § 405(g); Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). A court must sustain an ALJ's findings so long as they are supported by substantial evidence. 42 U.S.C. 405(g); Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002); Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court can't substitute its judgment for that of the ALJ by reconsidering the facts, reweighing

---

[2] Light work generally involves lifting or carrying ten pounds frequently and twenty pounds occasionally, a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. 404.1567(b).

3

the evidence, resolving factual disputes, or deciding questions of credibility. *See* Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000).

## Discussion

Mr. Carlson challenges the ALJ's assessment of his residual functional capacity and ability to work at step four of the disability evaluation. He contends the ALJ erred when he rejected the opinions of treating physician Dr. Mary Beth Jost and other medical sources; failed to make specific findings in support of his credibility determination; failed to consider the Veteran's Administration disability determinations and evidence of headaches; and failed to sufficiently develop the record.

At the first four steps of the disability evaluation, the claimant bears the burden to establish an entitlement to benefits on or before the date he was last insured. 20 C.F.R. § 404.320; Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). In Mr. Carlson's case, that date was March 31, 1994. The medical evidence and testimony presented at the hearing, however, focused almost entirely on Mr. Carlson's physical and mental condition *after* 1994.

Dr. Jost, a neurologist, began treating Mr. Carlson in August 1999. In a December 2001 letter, Dr. Jost said Mr. Carlson had been treated at Hines VA Hospital for cervical dystonia (also known as torticollis) and that his condition had

been resistant to treatment. The Medical Source Statement of Ability to Do Work-Related Activities she completed in May 2003 indicated that Mr. Carlson could lift without restriction, but that his impairment affected his ability to carry, stand, walk, sit, and push/pull to an extent she didn't say. Dr. Jost opined that Mr. Carlson could never climb, balance, kneel, crouch, crawl, or stoop, that he was unable to reach, handle, finger, or feel reliably, and that he had no environmental limitations.

In her follow-up letter in September 2004, Dr. Jost reported that Mr. Carlson "has been followed in the Neurology clinic at Hines VA Hospital since 1997, and by [her] since August 1999, for ataxia (causing problems with balance and equilibrium), migraine headaches, and cervical dystonia.." She stated that Mr. Carlson "has a history of trauma to the brain due to a gunshot wound while in the service in 1970 with injury to the right occipital area" and that he developed cervical dystonia around 1990.[3] Dr. Jost noted that the combination of gait impairment (ataxia) and the cervical dystonia "significantly impairs [Mr. Carlson's] gait, requiring the use of a cane to prevent falls," that he "no longer drives . . . [and] is not able to participate in physical activity that requires the head and eyes

---

[3] Dr. Jost described cervical dystonia as "a disabling condition that causes the head and neck to be forcefully turned...This markedly impedes a person's ability to perform tasks that require that the eyes and head be maintained in a forward position, including reading, writing, walking, carrying objects any distance, and driving. There is associated pain from the muscles involved in the abnormal muscle activity and from the individual's attempts to turn the head in a forward [position]."

5

to be held in a forward position," and that he "has been unable to maintain employment due to these conditions."

The ALJ found that Dr. Jost's opinions regarding the disabling extent of Mr. Carlson's impairments weren't entitled to significant weight because they weren't supported by medical evidence from the critical time period (before March 31, 1994). Citing Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006), Mr. Carlson contends that a retrospective diagnosis can support a finding of disability if it's corroborated by other evidence relating back to the claimed period of disability (*i.e.*, the CT scan showing bullet fragments in the skull and Mr. Carlson's testimony at the hearing), and that the ALJ should have given Dr. Jost's opinions controlling weight.

Medical evidence during the post-insured period is relevant only to the degree it sheds light on impairments and disabilities during the relevant insured period. *See* Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1992); Ray v. Bowen, 843 F.2d 998, 1005 (7th Cir. 1988); Meredith v. Bowen, 833 F.2d 650, 655 (7th Cir. 1987). Unlike Allord, in which the medical evidence included a doctor's opinion that the claimant was disabled prior to the date last insured, neither Dr. Jost nor any of Mr. Carlson's other medical sources offered retrospective diagnoses, or provided any objective evidence that would have shown that Mr. Carlson was disabled during the relevant insured period.

Dr. Fisher, a physician at Hines VA Hospital, examined Mr. Carlson in April 2002, noted his medical history in the progress notes from the VA Hospital, and

6

opined that Mr. Carlson "could continue to work, but his abilities would be limited…he could not work any job that required prolong[ed] walking or fine coordination." Dr. Fisher also indicated that Mr. Carlson's physical problems limited his ability to read and write. The ALJ acknowledged Dr. Fisher's report in his decision, but didn't indicate what weight, if any, he gave it.

Dr. Fisher's report, like Dr. Jost's, was prepared several years after Mr. Carlson's insured status expired. It provides no support for Mr. Carlson's claim of disability before March 31, 1994, and indeed substantiates the ALJ's determination that he was able to work despite his impairments.

The same is true of the opinions expressed by Terrence Kennon, a physician's assistant in the VA Hospital's orthopedics department, in progress notes prepared in May 2002. Mr. Kennon indicated that Mr. Carlson had been diagnosed with moderate degenerative joint disease, instability of the right knee, and limited range of motion in the right ankle. He opined that: "Gainful employment for this veteran, while not impossible would be difficult. He would not be able to perform any physical labor occupations. Sedentary occupation should allow for frequent rest breaks and positional adjustments as necessary."

Bassett Army Community Hospital's records are relevant in time, but they don't substantiate Mr. Carlson's claims. The records indicate that Dr. Grendron saw Mr. Carlson in August and October 1992 for neck spasms and reported a medical history of migraines, chronic torticollis, a gunshot wound to the right occipital area of the head, irritable bowel syndrome, and allergies. Dr. Grendron

7

noted that the spasmodic torticollis was improved but still "problemsome," that there was continued slow contraction of the face and neck to the left, and that Mr. Carlson's other problems were stable. He offered no opinion about the severity of Mr. Carlson's impairments or his functional limitations.

The ALJ can't ignore an entire line of evidence, but he isn't required to evaluate in writing every piece of evidence submitted. Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); Carlson v. Shalala, 999 F.2d 180, (7th Cir. 1993); Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984). The reports of Dr. Fisher, Dr. Gendron, and Terrance Kennon provided no support for Mr. Carlson's claims of disability before March 1994, and generally substantiated the ALJ's residual functional capacity assessment. Any error in the ALJ's analysis of that evidence was harmless. *See* Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires [the court] to remand a case in quest of the perfect opinion unless there is reason to believe that remand might lead to a different result.").

Mr. Carlson's assertion of disability from December 1989 to March 1994 was premised almost entirely on his testimony at the hearing. But Mr. Carlson and his wife both testified that his condition deteriorated after 1994.[4] Mr. Carlson reported no significant limitations in his activities from December 1989 (the

---

[4] Mr. Carlson's wife testified that she had only known Mr. Carlson since 1995. While her testimony corroborated Mr. Carlson's testimony regarding his symptoms and limitations from 1995 through the date of the hearing, it tells nothing about to the time period in question–December 31, 1989 (alleged onset of disability) to March 31, 1994 (date last insured).

8

alleged onset date) through March 31, 1994, but stated that his daily activities changed drastically thereafter, and that "1998 [was] when he really started falling apart." He testified that his worst medical problem was cervical dystonia (diagnosed in 1992), that his physician at the time put him on "relaxing drugs" (Clozapin), which relieved the problem and made it possible for him to drive, work, and function from 1989 to 1994. Mr. Carlson said he could lift 50 pounds from 1989-1994, but had problems carrying, and that he worked part-time for UPS in 1996 unloading trucks, lifting between 5 and 70 pounds. He testified that he never got a headache until 1992, experienced headaches only once a month initially and once or twice a month until 1999 or 2000, and that they could sometimes last up to six hours.

The ALJ considered Mr. Carlson's allegations of pre-April 1994 disability and found that they weren't supported by objective medical evidence or his activities during the relevant time period and weren't totally credible. His decision is supported by substantial evidence, and accordingly is entitled to deference. Sims v. Barnhart, 442 F.3d 536, 537 (7th Cir. 2006); Jens v. Barnhart, 347 F.3d 209, 219 (7th Cir. 2003).

Mr. Carlson also says the ALJ committed reversible error when he failed to address the Veterans Administration's disability determinations. Mr. Carlson testified at the hearing that his VA disability rating had increased from 30% to 100% over the years, that he thought it was at 30 or 40% in March 1994, and that it became 100% at some unidentified point in 2002 or after. But he never

9

presented the ALJ with a copy of any of the V.A.'s disability determinations, either at the hearing or in his supplemental materials. It's evident from the record that the ALJ reviewed the army and V.A. medical records from the relevant time period and found that they didn't establish the existence of an impairment or combination of impairments before March 31, 1994 that prevented Mr. Carlson from performing substantial gainful activity or established disability as the Social Security Act defines the term. While the ALJ's decision may not be perfect, it provides an adequate statement of his reasoning and is supported by substantial evidence.

Mr. Carlson summarily asserts that it was the ALJ's duty to develop the record further if the ALJ believed the evidence presented was insufficient. The court disagrees. Counsel represented Mr. Carlson at the hearing and is presumed to have presented his best case. Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007); Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988); Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987). "While it is true that the ALJ has a duty to make a complete record, this requirement can reasonably require only so much." Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).

> The difficulty is that no record is 'complete'–one may always obtain another medical examination, seek the view of one more consultant, wait six months to see whether the claimant's condition changes, and so on. Taking "compete record" literally would be a formula for paralysis.

Kendrick v. Shalala, 998 F.2d 455, 456 (7th Cir. 1993). The ALJ attempted to make as complete a record as possible in Mr. Carlson's case. The court requires nothing more. *See* Scheck v. Barnhart, 357 F.3d at 702.

The ALJ made it clear at the beginning of the hearing, and at the end, that the record lacked objective evidence relating to Mr. Carlson's claim of disability prior to March 31, 1994. During the hearing, he made numerous attempts to redirect Mr. Carlson's testimony to the relevant time period, with limited success. The ALJ gave Mr. Carlson additional time to supplement the record before issuing his opinion, but found that the evidence that was ultimately submitted — treating neurologist Dr. Mary Beth Jost's September 2004 letter, army medical records from February 1980 to October 1992, and medical records from Hines VA Hospital dated December 2004 to January 2005–didn't establish disability before March 31, 1994.[5]

Mr. Carlson's assertion that Social Security Ruling 83-20 required the ALJ to seek the services of a medical expert in determining the onset of disability is inaccurate. SSR 83-20 is inapplicable where, as here, the ALJ found that the claimant was not disabled. *See* Sheck v. Barnhart, 357 F.3d 697, 701 (7th Cir.

---

[5] Mr. Carlson presented further evidence to the Appeals Council when he requested review of the ALJ's decision, including psychiatric progress notes from Dr. Gegeshidze dated from September 07, 2005 to December 29, 2005 and a letter from a VA psychiatrist, Dr. George Paniotte, dated July 20, 2005, in which Dr. Paniotte opined that Mr. Carlson suffered from recurrent, moderate to severe dysthymic disorder and major depressive disorder and is deemed to be in need of psychiatric care. The Appeals Council concluded, however, that the information did not provide a basis for changing the ALJ's decision and denied Mr. Carlson's request for review.

2004); <u>Lichter v. Bowen</u>, 814 F.2d 430, 434 (7th Cir. 1987); <u>Campbell v. Chater</u>, 932 F.Supp. 1072, 1075 (N.D. Ill. 1996).

CONCLUSION

The ALJ's decision is based on his determination that there was no objective evidence prior to March 31, 1994 to support a finding of disability, and that Mr. Carlson remained capable of performing his past relevant work. His findings are supported by the record and adequate reasoning. Accordingly, the final decision of the Commissioner of Health and Human Services is AFFIRMED.

SO ORDERED.

ENTERED:  May 27, 2009

/s/ Robert L. Miller, Jr.
Chief Judge
Northern District of Indiana